[File No. 6100.]

SAX MOTOR COMPANY, a Corporation, Respondent, v. BEL-
FIELD FARMERS UNION ELEVATOR COMPANY, a
Corporation, Appellant.

(245 N. W. 488.)

Opinion filed November 30, 1932.

*Simpson, Mackoff & Kellogg,* for appellant.

C. H. Starke, for respondent.

NUESSLE, J.   Plaintiff brings this action to ·recover damages for the conversion of certain grain on which it held a mortgage.

Plaintiff in its complaint set out the execution and delivery of the mortgage to it and the conversion by the defendant of the grain covered thereby.   The defendant, answering, interposed a qualified general denial, and further alleged that if the plaintiff had any mortgage on the grain in question that it waived the same by authorizing the mortgagor to sell and deliver such grain.

The case was tried to a jury.   A verdict was returned for the plaintiff in the amount claimed by it.   Thereafter the defendant, having laid a proper foundation, moved for judgment notwithstanding the verdict.   This motion being denied judgment was entered on the verdict and the defendant appealed from the order denying its motion and from the judgment.

On this appeal defendant predicates error on account of rulings of the trial court on questions of evidence; on account of its denial of defendant's motion for a directed verdict made at the appropriate time; and likewise on account of the trial court's denial of the motion for judgment notwithstanding the verdict.

It appears from the record that the plaintiff is engaged in the busi-

ness of selling automobiles at Belfield. In May, 1929, it sold an automobile on conditional contract to one Wandler. The deferred portion of the purchase price ($200.08) was payable on September 18th. Plaintiff thereafter, by an instrument in writing, assigned this contract to the General Motors Acceptance Corporation, guaranteeing payment according to its terms and agreeing in case the remainder of the purchase price were not so paid that plaintiff would pay it to the assignee on the due date. Wandler defaulted. Thereafter plaintiff paid according to its agreement and the contract was redelivered to it, though no written reassignment was made. Wandler thereafter paid $25 and plaintiff took a mortgage upon Wandler's 1930 crop as security for the amount remaining unpaid. This crop matured. Wandler threshed it. He hauled the grain to the defendant's elevator and sold the same. He paid plaintiff only $50. Thereafter plaintiff made demand upon the defendant for the grain covered by the mortgage, or so much thereof as should be sufficient to satisfy the remainder of Wandler's obligation. This demand was refused. Thereupon plaintiff brought this action.

The defendant contended in the court below, and contends here, that plaintiff had authorized Wandler to haul the grain covered by plaintiff's mortgage to the defendant's elevator, sell the same, and out of the proceeds thereof to pay the plaintiff. That this constituted a waiver of the mortgage. Testimony was offered on this theory. The case was submitted to the jury. The only question of fact left for the determination of the jury was as to whether there had been such a waiver on the part of the plaintiff.

The defendant now insists that the evidence is insufficient to sustain the verdict and that a verdict in its favor should have been directed, in that it appears (1) that the plaintiff is not a proper party in interest; (2) that plaintiff waived any rights it might have had under the mortgage in question; (3) that there is no competent proof of the value of the grain claimed to have been converted.

Defendant contends that there is no competent evidence to show a reassignment of the sales contract to the plaintiff and, therefore, the plaintiff had no such interest as would sustain the mortgage given to it or warrant it in bringing this action. It appears from the record, however, that while there was no written reassignment of the sales

contract from the Acceptance Corporation, nevertheless, on Wandler's default, plaintiff under its guaranty paid the balance due on the contract according to its terms and thereupon the contract was redelivered to it and is now in its possession. And plaintiff's agent testified that the plaintiff owned the contract. We think, therefore, there is no merit to this particular contention.

Plaintiff called Wandler as its witness. He testified as to the inception of the transaction with the plaintiff, his default, the subsequent execution and delivery of the mortgage, the threshing of the mortgaged grain and its delivery to the defendant's elevator, and the sale by him to the defendant. On cross-examination the defendant elicited from him testimony to the effect that at threshing time Gunderson, plaintiff's managing officer, told him to take the mortgaged grain to the elevator, sell it, and pay the plaintiff out of the proceeds. Defendant contends that this establishes a waiver of all plaintiff's rights under the mortgage. Further, that Wandler, having been called as plaintiff's witness, plaintiff was bound by his testimony with respect to Gunderson authorizing Wandler to sell the grain and that plaintiff thereafter could not properly offer evidence to the contrary. Plaintiff called Gunderson for this purpose. Defendant having objected to the introduction of such testimony now insists there was no competent evidence to sustain the jury's finding that there had been no waiver. While the general rule is that a party cannot impeach his own witness by proving he has made different statements out of court (see George v. Triplett, 50 N. D. 51, 63 N. W. 891), nevertheless this rule does not go so far as to conclude a party because of adverse testimony given by one of his own witnesses. He may call other witnesses to testify to the contrary touching the same matter, not for the purpose of impeaching the first witness (though it may tend to have that effect), but for the purpose of offering proof upon a matter in issue before the jury. Dubs v. Northern P. R. Co. 51 N. D. 113, 199 N. W. 191; Acker v. Jardine, 58 N. D. 430, 226 N. W. 483. See also Wigmore, Ev. §§ 907 and 908, and cases cited. We think that this is the rule applicable in the instant case.

One Cameron was the defendant's manager in charge of its elevator at Belfield and purchased the grain in question. Plaintiff called him as an adverse witness and, among other things, inquired as to the value

of the grain, that is, the market price at the time of the alleged conversion. Defendant objected to this testimony as not being proper under the circumstances and accordingly contends that there was no competent evidence as to the value of the grain. The ground of this objection which was overruled, was that Cameron was an expert on grain values; that having been called as an adverse witness he could not be examined as an expert to prove the plaintiff's case. Counsel cites in support of this, Hunder v. Rindlaub, 61 N. D. 389, 237 N. W. 915. We are of the opinion, however, that the testimony thus elicited from Cameron was not within the rule announced in the Rindlaub Case. In that case the witness was called as an expert to answer on an assumption of the truth of certain facts hypothetically stated. In the instant case the inquiry was as to a matter of fact that was evidenced by and could be ascertained from an examination of the defendant's records which were made and kept by the witness. See § 3125b3, 1925 Supplement.

Accordingly, after a careful examination of the record, we are of the opinion that the evidence is sufficient to sustain the verdict as returned by the jury and the trial court properly ruled with respect thereto.

Defendant further complains on account of certain other of the trial court's rulings touching questions of evidence. The issue was as to whether or not the plaintiff had waived its rights under its mortgage. In that behalf, contending that it had not, plaintiff offered the testimony of Gunderson to the effect that he had not given Wandler permission to sell the grain and that he had called at the defendant's elevator before it was sold and had told the defendant's manager that plaintiff had a mortgage on it and that when it was sold the checks issued in payment thereof should be issued in the joint names of Wandler and the plaintiff. Thereafter the defendant's manager, Cameron, was called as a witness on behalf of the defendant. He was asked as to whether plaintiff had given him any notice, verbally or otherwise, with respect to the grain. Plaintiff objected to this testimony on the ground that notice was immaterial. Plaintiff's objection was sustained. Thereupon, the defendant offered to prove by the witness Cameron "that the witness Gunderson who testified did not at any time serve any notice upon him of any kind informing him that he held a mortgage or other lien of any kind upon this grain prohibiting

him in any way from buying this grain or give him any notice whatever, either verbally or in writing." Plaintiff again objected to this offer as being immaterial. The objection was sustained.

We think that the foregoing ruling was erroneous and prejudicial. The issue was as to whether or not there had been any waiver of the mortgage by the plaintiff. The defendant contended that there had been. Plaintiff denied this. Gunderson's testimony with regard to the conversation with Wandler and with Cameron was offered to establish that there was no waiver. His testimony, in that behalf, was not only as to his conversation with Wandler respecting the sale of the grain, but also as to the conversation had with Cameron, wherein he told Cameron that plaintiff had a mortgage on the grain and that when it was sold the check should be made payable jointly to Wandler and the plaintiff. As we read the offer of proof, the purpose of the inquiry was to establish that there was no such conversation between Gunderson and Cameron and to that extent to rebut the proofs of the plaintiff tending to show that there had been no waiver. It is impossible to say how its effect would have been reflected in the verdict if this testimony had been elicited. This being so there must be a reversal.

Accordingly the judgment is reversed and a new trial ordered.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.